UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
**MOHAMMED FAHMI JABER**,                                        :
on behalf of I.M.J., his minor child,                            :
                                                                 :    **MEMORANDUM DECISION AND**
        Plaintiff,       :    **ORDER**
                                                                 :
  – against –                                          :    20-CV-2035 (AMD)
                                                                 :
**COMMISSIONER OF SOCIAL SECURITY**,                             :
       Defendant.             :
                                                                 :
---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

  The plaintiff challenges the Social Security Commissioner's decision that his minor child was not disabled for the purpose of receiving Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons explained below, I deny the defendant's motion for judgment on the pleadings and grant in part the plaintiff's cross-motion for judgment on the pleadings.

BACKGROUND

  On April 7, 2017, the plaintiff applied for SSI on behalf of his minor child, I.M.J., alleging disability beginning September 30, 2014 from a learning disorder and ADHD. (Tr. 88, 96, 220.) In a notice dated July 11, 2017, the Social Security Administration ("SSA") informed the plaintiff that his application had been denied. (Tr. 97-101.)

  The plaintiff submitted a timely request for review by an Administrative Law Judge ("ALJ"). (*See* Tr. 103-05.) ALJ Andrea Addison held a hearing on January 9, 2019, at which the plaintiff, I.M.J.[1] and a medical expert testified. (Tr. 46.) The medical expert testified that he could not reach any conclusions about I.M.J.'s health because the record included only her

---

[1] I.M.J. was seven years old at the time, and in second grade. (Tr. 46, 57, 96.)

school records, without any "medical information" from medical sources. (Tr. 63.) The ALJ ordered that I.M.J. be evaluated by two consultative examiners—a pediatric physician and a child psychologist. (Tr. 66-67.) Dr. Todd Deneen, a child psychologist, examined I.M.J. on February 26, 2019, and on March 13, 2019, Dr. Lana Leytes, a pediatrician, examined her. (Tr. 367-76.) On April 3, 2019, the ALJ conducted a supplemental hearing, at which the plaintiff, I.M.J. and a medical expert—Dr. Karen Ruecker—testified.[2] (Tr. 70.) The ALJ issued a decision on April 15, 2019, in which she determined that I.M.J. was not disabled within the meaning of the Social Security Act. (Tr. 22-44.)

On May 2, 2019, the plaintiff submitted a timely request for review to the Appeals Council and attached I.M.J.'s records from the New York City Department of Education, including an April 16, 2019 "Individualized Education Program (IEP)." (Tr. 6-21, 218.) In a letter dated March 26, 2020, the Appeals Council informed the plaintiff that his request for review was denied, making the ALJ's determination the "final decision" of the Social Security Commissioner. (Tr. 1-5.) The Appeals Council also advised the plaintiff that his additional evidence did "not show a reasonable probability that it would change the outcome of the decision." (Tr. 2.)

The plaintiff filed this action on May 5, 2020. (ECF No. 1.) On January 29, 2021, the Commissioner filed a motion for judgment on the pleadings. (ECF No. 11.) On April 28, 2021, the Commissioner entered the plaintiff's opposition and cross-motion for judgment on the pleadings on the docket. (ECF No. 13.) The same day, the Commissioner filed a letter explaining that he had received the *pro se* plaintiff's filing on March 24, 2021 but did not realize

---

[2] At both proceedings, the ALJ asked I.M.J. a series of basic questions; I.M.J. rarely gave verbal answers, and instead either nodded or shook her head in response to the ALJ's questions. (*See, e.g.*, Tr. 56, 77-79.)

2

it had not already been submitted to the Court; the Commissioner also advised the Court that he did not intend to file a reply. (ECF No. 14.)

## STANDARD OF REVIEW

A district court reviewing the Commissioner's final decision is limited to determining "whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). The district court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). When the Commissioner's determination is supported by substantial evidence, "the decision must be upheld, even if there also is substantial evidence for the plaintiff's position." *Cerqueira v. Colvin*, No. 14-CV-1134, 2015 WL 4656626, at *11 (E.D.N.Y. Aug. 5, 2015) (internal quotation marks omitted). A district judge may not "substitute [her] own judgment for that of the [ALJ]," even if she would have made a different decision. *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991).

"Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,'" the Court will not defer to the ALJ's determination "[w]here an error of

law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (alteration in original). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

## DISCUSSION

The Social Security Act provides a three-step process for evaluating whether a person under the age of 18 is "disabled" within the meaning of the Act. 20 C.F.R. § 416.924(a). First, the Commissioner determines whether the claimant engages in substantial gainful activity. *Id.* If she does, she is not disabled. *Id.* If she does not, the Commissioner next determines whether the claimant has a medically determinable impairment or combination of impairments that is "severe." *Id.* If the claimant does not have any severe impairments, then she is not disabled. *Id.* If she does, then the Commissioner determines whether the claimant's impairment meets, medically equals, or functionally equals the severity of an impairment listed in the Social Security regulations. *Id.* In determining whether an impairment "functionally equals" a listed impairment, the Commissioner evaluates the claimant's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. § 416.926a(b)(1). To functionally equal a listing, the claimant's impairment must produce a "marked" limitation in at least two domains or an "extreme" limitation in at least one domain. § 416.926a(a). A "marked" limitation exists when a child's impairment "interferes seriously" with her ability to initiate, sustain, or complete activities

4

independently, and is "more than moderate" but "less than extreme." § 416.926a(e)(2). A child's impairment is an "extreme limitation" when it "interferes very seriously" with her ability to initiate, sustain, or complete activities independently, and is "more than marked." § 416.926a(e)(3).

After finding that I.M.J. had not engaged in substantial gainful activity, the ALJ concluded that she had a severe impairment—a learning disorder—but that her ADHD was non-severe because it was not associated with any functional limitations. (Tr. 28.) The ALJ also determined that I.M.J.'s impairments did not meet or equal the severity of impairments listed in the applicable Social Security regulations. (Tr. 28-29.) I.M.J. did not meet or medically equal Listing 112.02, Neurocognitive Disorders, because the evidence did not establish a clinically significant deviation or decline from normal cognitive development or meet or "equal [the] medical significance" of the remaining listing criteria. (*Id.*; *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 112.02; § 416.926(b).) The ALJ also determined that the claimant's impairments did not functionally equal the severity of impairments listed in the applicable Social Security regulations. (Tr. 29-40.) The ALJ evaluated the six functional equivalence domains, drawing her conclusions from Dr. Karen Ruecker's testimony. (Tr. 33-40, 85-86.) She determined that I.M.J. had a "less than marked" limitation in acquiring and using information (first domain), attending and completing tasks (second), interacting and relating with others (third) and caring for herself (fifth). (Tr. 33-39.) The ALJ determined that I.M.J. had "no limitation" in moving about and manipulating objects (fourth) or in health and physical well-being (sixth). (Tr. 37-40.) Accordingly, the ALJ determined that I.M.J. was not disabled. (Tr. 40.)

The plaintiff argues that the ALJ assigned incorrect weight to the medical opinions of two doctors. He disputes the ALJ's conclusion that I.M.J.'s ADHD was not severe. He also

5

challenges the ALJ's conclusion that I.M.J.'s learning disability did not meet or equal the severity of a listed impairment, and specifically, the finding that I.M.J. had a "less than marked" limitation in the first (acquiring and using information), second (attending and completing tasks) and third (interacting and relating with others) domains. Finally, the plaintiff faults the ALJ for failing to address the effect of I.M.J.'s developmental delays.

The defendant argues that the ALJ's decision was supported by substantial evidence and that the ALJ properly weighed the evidence in reaching her conclusions.

**I.     Administrative Record**

The record contains little medical evidence. The plaintiff testified that I.M.J. did not have a treating physician for her learning disorders; instead, I.M.J.'s school evaluated and treated her learning disorders. (Tr. 52, 59, 62.) It appears from the record that the school has provided I.M.J. with ongoing speech therapy, occupational therapy, physical therapy and weekly counseling. (*See, e.g.*, Tr. 372.) Although the administrative transcript includes school records that seem to incorporate information from some of these providers (Tr. 289-350), there do not appear to be treatment notes or clear diagnoses from any provider. Moreover, it is probable that at least some of the professionals providing these services are licensed, and would be considered "acceptable medical sources" under the relevant regulations. *See* 20 C.F.R. § 416.902 (effective until March 27, 2017).

The ALJ has an obligation to complete any gaps in the administrative record. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). There is potentially relevant medical information about I.M.J.'s diagnoses and treatment that was not included in the record. On remand, the ALJ should determine the extent to which there are treatment and diagnostic notes from I.M.J.'s speech,

occupational and physical therapists, as well as her counselor, and supplement the record accordingly.

## II. Weight of Medical Opinions

The plaintiff challenges the ALJ's determination assigning Dr. Ruecker's opinion "great weight" and Dr. Leytes' opinion little weight.[3] (ECF No. 13 at 3.)

### a. Dr. Ruecker

Dr. Ruecker, a pediatrician who appeared at the April 3, 2019 hearing, testified after reviewing the record that she could not conclude that I.M.J.'s ADHD was severe because she did not "have the evidence to say it's severe based on the record" and because I.M.J. was "not on any medication" for ADHD. (Tr. 83-85.) Dr. Ruecker also opined that I.M.J.'s learning disability did not meet or equal the listings because she had less than marked limitations in the first (acquiring and using information), second (attending and completing tasks), third (interacting and relating with others) and fifth (caring for herself) domains; and had no limitations in the fourth (moving about and manipulating objects) and sixth (health and physical well-being) domains. (Tr. 32-33.)

In assigning "great weight" to Dr. Ruecker's opinion (Tr. 33), the ALJ properly applied the regulations for evaluating medical opinions, 20 C.F.R. § 416.927(c)(1)-(c)(6). The ALJ observed that Dr. Ruecker—a pediatrician—is a specialist familiar with the relevant Social Security regulations, that she reviewed the medical record, that she gave a "detailed explanation with references to the record" for her findings (*see* Tr. 85), and that the opinion was consistent with the record as a whole (Tr. 33). Because the record contains scant medical information about

---

[3] The ALJ assigned Dr. Deneen's opinion "significant weight" (Tr. 32), which the plaintiff does not challenge.

I.M.J.'s ADHD and because Dr. Ruecker based her Step Three conclusions on specific citations to the record, the ALJ did not err by assigning Dr. Ruecker's opinion "great weight."

### b. Dr. Leytes

Dr. Leytes, a pediatrician and consultative examiner ("CE"), examined I.M.J. on March 13, 2019. (Tr. 372-76.) She opined that I.M.J.'s behavior was normal for her age and that she related to her father and to the examiner in an age-appropriate way, but that she "appeared to have an abnormal attention span. Every instruction needed to be repeated twice." (Tr. 375.) Dr. Leytes also opined that I.M.J. could not "participate in educational, social, and recreational activity appropriate for her age," that she needed "maximal persistent instructions" in order to follow directions, and "intensive speech and occupational therapy." (*Id.*) Dr. Leytes suggested that I.M.J. be referred to a psychiatrist. (*Id.*) Finally, Dr. Leytes diagnosed I.M.J. with a developmental delay and a speech language delay, and described her prognosis as "fair." (*Id.*)

The ALJ gave Dr. Leytes' opinion "little weight" because the doctor did not identify any specific limitations. (Tr. 32.) The ALJ also found that Dr. Leytes' conclusions did not match the record, "which shows that [I.M.J.] has been able to stay in her appropriate grade at school, and Mr. Jaber's [] testimony that [I.M.J.] has been doing better at school with the current, more specific IEP." (*Id.*) The ALJ also observed that Dr. Leytes' opinion was contradicted by her examination findings that I.M.J.'s behavior was normal for her age, and that she related to the examiner and to her father in an age-appropriate way. (*Id.*)

Under the relevant regulations for evaluating medical opinions, the ALJ's determination was sound. Dr. Leytes had no treating relationship with I.M.J. and examined her only once. 20 C.F.R. § 416.927(c)(2). There was, moreover, little objective medical evidence to support Dr. Leytes' opinion; in fact, other evidence in the record contradicted Dr. Leytes' conclusions,

8

including the plaintiff's testimony and Dr. Leytes' own examination findings. §§ 416.927(c)(3), (c)(4). Thus, the ALJ did not err by assigning Dr. Leytes' opinion "little weight."

### III. Step Two Analysis

The plaintiff disagrees with the ALJ's conclusion that I.M.J.'s ADHD was not severe. He emphasizes that the record did not include information from a treating psychologist or psychiatrist, notwithstanding recommendations by consulting examiners that I.M.J. be referred to such specialists. (ECF No. 13 at 3.)

The ALJ based her determination on Dr. Ruecker's testimony that the record did not establish that I.M.J.'s ADHD was severe. (Tr. 83-85.)

It is the claimant's burden to establish that her impairments are "severe" within the meaning of the Social Security Act. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). The only medical information about I.M.J.'s ADHD was the consulting examiners' reference to a reported history of ADHD. (*See* Tr. 84.) As explained above, the record does not include information from a treating physician,[4] and the plaintiff testified that I.M.J. did not have a treating physician for her ADHD. (*See* Tr. 52, 59, 62.) As discussed above, the ALJ should supplement the record on remand with any treating or diagnostic notes from I.M.J.'s therapists and counselor. The ALJ also should reevaluate her Step Two analysis based on any additional relevant information in the record.

---

[4] The consulting examiners recommended that I.M.J. be referred to a psychologist or psychiatrist. (Tr. 370, 375.)

## IV. Functional Equivalence

The plaintiff challenges the ALJ's conclusion that I.M.J. did not have at least two "marked" limitations or at least one "extreme" limitation in the six functional domains.[5] (ECF No. 13.)

### a. Acquiring and Using Information

The plaintiff disagrees that I.M.J. had a "less than marked" limitation in acquiring and using information (first domain). (*Id.* at 1-2.)

I.M.J.'s school did a psychoeducational evaluation, which showed that she had "low average to average cognitive ability." (Tr. 290.) She scored an 89/90 on the Wechsler Preschool and Primary Scale of Intelligence ("WPPSI-IV") test, which is low average. (Tr. 292.) CE Dr. Deneen reported that I.M.J.'s thought process was "coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting," that her attention and concentration "were mildly impaired due to attention deficits," and that her "recent and remote memory skills were mildly impaired due to working memory difficulties." (Tr. 368-69.) According to Dr. Deneen, I.M.J.'s "intellectual functioning" was in the "borderline range," and her "general fund of information was somewhat limited." (Tr. 369.) He concluded that she had a "moderate to marked limitation" in her ability to "learn in accordance to cognitive functioning." (Tr. 370.) Dr. Deneen also observed that I.M.J.'s insight and judgment were "poor due to developmental delays" and that "[t]he results of the examination appear to be consistent with cognitive problems" that "may significantly interfere with [I.M.J.]'s ability to function on a

---

[5] The plaintiff also asserts that the "ALJ erred when she concluded that I.M.J.'s severe learning disorder did not meet or medically equal one of the listed impairments" (ECF No. 13 at 1), but provides no details or specific support for the argument. On remand, the ALJ should reevaluate her determination that I.M.J.'s impairments do not meet or medically equal a listing in light of any relevant information added to the record.

daily basis." (*Id.*) As noted above, CE Dr. Leytes opined that I.M.J. "appeared to have an abnormal attention span. Every instruction needed to be repeated twice." (Tr. 375.)

The ALJ determined that I.M.J. had a "less than marked limitation" in acquiring and using information because despite her "challenges performing academically in school, the record shows that [she] has been able to stay in her appropriate grade at school, and [her father testified] that [she] has been doing better at school with the current, more specific IEP." (Tr. 34.)

On remand, the ALJ should reevaluate her conclusions in light of any additional relevant information, including records from I.M.J.'s therapists and counselor.

### b. Attending and Completing Tasks

The plaintiff also disagrees that I.M.J. had a "less than marked" limitation in attending and completing tasks. (ECF No. 13 at 2.) The plaintiff emphasizes the evidence that I.M.J.'s older sister helps her complete her homework and that I.M.J. did not complete assigned drawings during her psychoeducational assessment. (*Id.*)

According to the Psychoeducational Evaluation Report, I.M.J. "required repetition, prompting and reminders" to do her work. (Tr. 289.) The May 14, 2018 IEP reports that I.M.J. could "pack and unpack her backpack as well as take off [and] put on her coat with minimal assistance," "use the bathroom independently," and "open her snack and lunch containers and packages [without] assistance." (Tr. 268.) As discussed above, Dr. Deneen opined that I.M.J.'s attention and concentration "were mildly impaired due to attention deficits," and that she would have a moderate limitation "sustain[ing] concentration and complet[ing] age-appropriate tasks." (Tr. 369-70.) Dr. Leytes likewise opined that I.M.J. "appeared to have an abnormal attention span. Every instruction needed to be repeated twice." (Tr. 375.)

The ALJ concluded that I.M.J. had a "less than marked" limitation in this domain. (Tr. 35.) On remand, she should determine if there is any relevant additional information that changes her conclusion.

### c. Interacting and Relating with Others

The plaintiff also disagrees that I.M.J. had a "less than marked" limitation in interacting and relating with others. (ECF No. 13 at 2-3.) The plaintiff emphasizes I.M.J.'s "reticence and poor oral communication" at the hearing and the psychoeducational report that I.M.J. struggled to establish and maintain eye contact and spoke very quietly when called upon in class. (*Id.* at 2-4.)

The Psychoeducational Evaluation Report describes I.M.J. as "passive, soft-spoken and sometimes withdrawn," and notes that she struggled to establish and maintain eye contact with others. (Tr. 289.) While I.M.J. "transitions nicely and is cooperative," she needs to develop the skills to establish rapport and initiate conversations with her peers. (Tr. 292.) According to Dr. Deneen, I.M.J.'s "demeanor was cooperative" and her social skills were age appropriate. (Tr. 368.) He also observed that her eye contact was appropriate, as were her "[e]xpressive and receptive languages." (*Id.*) Dr. Deneen opined that I.M.J. had a mild limitation attending to, following and understanding age-appropriate directions, maintaining appropriate social behavior, and interacting adequately with adults. (Tr. 369-70.) He also opined that she had a moderate limitation interacting adequately with peers. (Tr. 370.) Dr. Leytes described I.M.J.'s behavior as "normal for [her] age" and observed that she "related to the examiner and [to her] father in an age-appropriate way." (Tr. 375.)

Based on the foregoing, the ALJ determined that I.M.J. had a less than marked limitation in interacting and relating with others. (Tr. 37.) As noted above, there may be additional records

from I.M.J.'s school that would change the ALJ's conclusion. Accordingly, the ALJ should reevaluate her determination after supplementing the record with any additional relevant information.

### d. Caring for Oneself

Finally, the plaintiff disputes the ALJ's decision that I.M.J. had a "less than marked" limitation in caring for herself. (ECF No. 13 at 2-5.) He cites his testimony that his daughter could not brush her teeth or her hair, or put on her shoes because of her poor "pincer grasp." (*Id.* at 5 (citing Tr. 80-81).)

I.M.J.'s parents report that she needs their help to get dressed and put on her shoes. (Tr. 303.) Her mother helps feed her because she is a sloppy eater. (*Id.*) Her parents also report that she struggles with her "pincer grasp." (*Id.*) According to the May 14, 2018 IEP, I.M.J. could "pack and unpack her backpack as well as take off [and] put on her coat with minimal assistance," "use the bathroom independently," and "open her snack and lunch containers and packages [without] assistance." (Tr. 268.) Dr. Deneen concluded—presumably based on information from the plaintiff—that although I.M.J. can "feed herself finger foods, drink from a cup, and use a spoon," "she needs help with a fork and knife." (Tr. 369.) Dr. Deneen opined that I.M.J. had a mild limitation in being aware of danger and taking necessary precautions. (Tr. 369-70.)

Based on the foregoing, the ALJ determined that I.M.J. had a less than marked limitation in her ability to care for herself. (Tr. 39.) On remand, the ALJ should reevaluate this conclusion to the extent that there is additional relevant evidence.

### e. Fourth and Sixth Domains

The ALJ determined that I.M.J. had "no limitation" in the fourth domain—moving about and manipulating objects—or in the sixth domain—health and physical well-being. (Tr. 37-40.) The plaintiff did not challenge either conclusion. (*See* ECF No. 13.) Nevertheless, on remand, the ALJ should reassess these conclusions based on any relevant additions to the record.

## V. Other Objections

The plaintiff argues that although the consultative examiners "mentioned IMJ's developmental delays," the ALJ did not address those delays in her analysis. (ECF No. 13 at 5.)

Dr. Deneen opined that I.M.J.'s insight and judgment were "[p]oor due to developmental delays." (Tr. 369.) Under "Diagnosis," in a report summarizing her consultative examination of I.M.J., Dr. Leytes listed "[d]evelopmental delay." (Tr. 375.)

Although the ALJ may not have used the phrase "developmental delays" in her decision, she discussed and considered the nature and extent of I.M.J.'s limits and abilities documented in the record. On remand, she should incorporate any relevant additional information in the record.

## VI. Evidence Submitted on Appeal

On appeal, the plaintiff submitted New York City Department of Education records—an IEP dated April 16, 2019. (Tr. 6-21.) The Appeals Council determined that the IEP did not show a "reasonable probability" of "chang[ing] the outcome of the decision." (Tr. 2.); 20 C.F.R. § 416.1470(a)(5).

The plaintiff does not argue that the Appeals Council should have reviewed the additional evidence in his brief. In any event, the Appeals Council's determination was sound. The IEP largely duplicates information already in the record, but also suggests that I.M.J.'s abilities have improved because of the school's interventions. For example, the IEP reports that I.M.J.

recognized 25 of 25 words in list "A" of a High Frequency Word Recognition Assessment, whereas she had recognized only 3 of 25 words in list "A" the year before. (Tr. 6.) Thus, it is unlikely that the IEP would have changed the determination.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings is denied. The plaintiff's cross-motion for judgment on the pleadings is granted in part. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                  s/Ann M. Donnelly
                                           ANN M. DONNELLY
                                           United States District Judge

Dated: Brooklyn, New York
        July 1, 2021